101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Gary DUNN, Plaintiff-Appellant,
v.
Shirley S. CHATER, Social Security Administration
Commissioner, Defendant-Appellee.
 No. 95-6400.
 United States Court of Appeals,
Second Circuit.
 July 11, 1996.
 
 Fletcher D. Proctor, Tapper & Sozio, Springfield VT, for Appellant.
 Thomas D. Anderson, Assistant United States Attorney for the District of Vermont, Rutland, VT, for Appellee.
 Present: MINER, JACOBS, PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Vermont, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Plaintiff-appellant Gary Dunn appeals from a judgment entered in the United States District Court for the District of Vermont (Niedermeier, M.J.) granting the motion of defendant-appellee Shirley S. Chater, Social Security Administration Commissioner (the "Commissioner"), for summary judgment upholding the Commissioner's denial of Social Security benefits to Dunn.
 
 
 5
 Dunn was born on February 24, 1961, and has an eleventh grade education, with three years of vocational training in the building trades. Dunn has worked as a machine operator, a pressman helper, a hand packager, a human services aide, a cracker maker, a machine loader and off-bearer, a groundskeeper, a dishwasher, a construction laborer, and a machine sander.
 
 
 6
 Dunn asserts that he first began experiencing back pain in 1979. His back problems continued throughout the 1980s when, on at least three occasions, he re-injured his back. On May 22, 1989, Dunn sustained further back injury while moving a large roll of paper at work and has not worked since that time. Dunn claims that he exacerbated this injury when he fell in August of 1992.
 
 
 7
 On March 2, 1993, Dunn applied for Title II Social Security Disability Insurance benefits ("SSD") and Title XVI Supplemental Security Income benefits ("SSI"). The benefits were denied by the Social Security Administration initially and on reconsideration. Dunn appealed the decision to an Administrative Law Judge ("ALJ"), who, after examining Dunn's medical history and hearing testimony from Dunn, Dunn's wife, and a vocational expert, issued a decision finding that Dunn was not disabled and therefore not eligible to receive Social Security benefits. The ALJ, in his January 26, 1994 decision, determined that, while Dunn did not have the residual functional capacity to perform his past relevant work, he did have the capacity to perform a limited range of sedentary work.
 
 
 8
 On August 1, 1994, Dunn filed a complaint in district court seeking review of the Commissioner's denial of benefits. On January 18, 1995, Dunn moved for summary judgment. He also requested a remand to the Commissioner for further administrative proceedings. The Commissioner moved for summary judgment on February 16, 1995. On August 2, 1995, the district court denied Dunn's request for a remand, finding that the ALJ properly had developed the record. The district court reserved decision on the Commissioner's motion for summary judgment in order to allow Dunn to respond to that motion. On September 29, 1995, after it had received Dunn's additional submissions, the district court concluded that the ALJ's decision was supported by substantial evidence and granted the Commissioner's motion for summary judgment.
 
 
 9
 On appeal, Dunn argues that the district court erred in granting the Commissioner summary judgment because the record does not support the ALJ's finding that Dunn was capable of performing limited sedentary work. Dunn contends, inter alia, that: (1) the hypothetical question posed by the ALJ to the vocational expert at the administrative hearing did not adequately communicate Dunn's physical impairments; and (2) the ALJ failed to sufficiently credit Dunn's own testimony regarding his physical impairments. We think Dunn's arguments are meritless.
 
 
 10
 Pursuant to the Social Security regulations, a claimant will not be eligible for SSD and SSI benefits if the ALJ determines that there is substantial gainful work in the national economy that a claimant can perform. See Townley v. Heckler, 748 F.2d 109, 113 (2d Cir.1984). At the hearing, the ALJ asked the vocational expert whether a person who was capable of unskilled sedentary work, but needed to "change position at will," could find employment in the national economy. The expert replied that there were various jobs that met this description. These included such jobs as security guard monitor, cashier, and bench trade inspector. The ALJ then determined that, because Dunn had the capacity for unskilled sedentary work, but needed to change position at will, he could fulfill the jobs described by the expert.
 
 
 11
 Dunn argues that the hypothetical posed by the ALJ to the expert witness did not adequately convey his physical impairment. Specifically, Dunn argues that the ALJ's statement "change position at will" did not communicate to the expert witness that Dunn needed to stand up at will, and that, when he was standing, he would not be able to stoop. However, we think that there is no reason to conclude that the phrase "change position at will" did not communicate to the expert that the individual described in the ALJ's hypothetical would not have to stand up on occasion. "Change position at will" is a broad expression, and it is difficult to see how it could not have encompassed at least some standing up. Furthermore, the jobs that the expert testified that a person could perform were not jobs where one would not be able to stand up at will. For instance, the expert testified that a person, such as the one described in the ALJ's hypothetical, could work as a cashier or as a security guard monitor. There are no physical restraints in these jobs that would prevent an individual from standing up from time to time. Accordingly, we think that the hypothetical posed by the ALJ accurately described Dunn's functional limitations.
 
 
 12
 Dunn also argues that the ALJ failed to sufficiently credit Dunn's own testimony regarding his physical impairments. We disagree. In making his determination, the ALJ is required to consider subjective complaints of pain by the claimant. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). However, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary of Health and Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (third alteration in original) (quotation omitted).
 
 
 13
 In the present case, the ALJ found that Dunn's testimony failed to "adequately support his position that he was totally disabled because it was not consistent with the objective medical evidence and ... his complaints were found to be contradicted by his activities of daily living as well as the functional limitations reported to him by his own physicians." Clearly the record supports this finding. For example, Dunn's testimony that he goes fishing and hunting on a regular basis and that he performs routine household tasks undercuts his claim that he was completely disabled and could not work. Accordingly, we think that the ALJ sufficiently credited Dunn's testimony, and that his decision is supported by the record.
 
 
 14
 We have considered Dunn's remaining contentions, and we find them all to be without merit.